FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 23, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

ALPHONSO M.,

     Plaintiff,

     v.

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

No.  1:19-CV-03003-RHW

**ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

Before the Court are the parties' cross-motions for summary judgment. **ECF Nos. 11, 16**. Plaintiff brings this action seeking judicial review pursuant to 42 U.S.C. § 1383(c)(3) of the Commissioner of Social Security's final decision, which denied his application for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §1381-1383F. *See* Administrative Record (AR) at 1-6, 12-35. After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 1

# I.    Jurisdiction

Plaintiff filed his application for supplemental security income on March 3, 2015. *See* AR 15, 191-95. His alleged onset date of disability was January 15, 2005.[1] AR 191. Plaintiff's application was initially denied on May 15, 2015, *see* AR 116-19, and on reconsideration on October 7, 2015. *See* AR 123-28. On October 26, 2015, Plaintiff filed a request for a hearing. AR 129-131.

A hearing with Administrative Law Judge ("ALJ") Glenn G. Meyers occurred on May 18, 2017. AR 36-88. On January 31, 2018, the ALJ issued a decision concluding that Plaintiff was not disabled as defined in the Act and was therefore ineligible for benefits. AR 12-35. On November 7, 2018, the Appeals Council denied Plaintiff's request for review, AR 1-6, thus making the ALJ's ruling the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481. On January 3, 2019, Plaintiff timely filed the present action challenging the denial of benefits. ECF No. 1. Accordingly, Plaintiff's claims are properly before this Court pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

# II.    Five-Step Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or

---

[1] However, for claims under Title XVI, benefits are not payable prior to the application's filing date. *See* 20 C.F.R. § 416.335. At the hearing, Plaintiff amended his alleged onset date to the date of his application. AR 42.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 2**

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if the claimant's impairments are so severe that the claimant is not only unable to do his or her previous work, but cannot, considering claimant's age, education, and work experience, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a)(4). Step one inquires whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. § 416.920(b). Substantial gainful activity is defined as significant physical or mental activities done or usually done for profit. 20 C.F.R. § 416.972. If the claimant is engaged in substantial activity, he or she is not entitled to disability benefits. 20 C.F.R. § 416.920(b). If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(c). A severe impairment is one that has lasted or is expected to last for at least twelve months, and must be proven by objective medical evidence. 20 C.F.R. § 416.908-09. If the claimant does not have

a severe impairment, or combination of impairments, the disability claim is denied and no further evaluative steps are required. Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether one of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings"). If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits. *Id.* If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends. *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 416.912(f), 416.920(g), 416.960(c). To meet this burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in

"significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 676 F.3d 1203, 1206 (9th Cir. 2012).

### III.    Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g). The scope of review under this section is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)). In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Even if the evidence in the record is susceptible to more than one rational interpretation, if inferences reasonably drawn from the record support the ALJ's decision, then the court must uphold that decision. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954-59 (9th Cir. 2002).

### IV.    Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings and only briefly summarized here. Plaintiff was 27 years old on the alleged date of onset and 37 years old when he filed his application, which the regulations define

as a younger person. AR 29, 90; *see* 20 C.F.R. § 416.963(c). He attended high school through the 11th grade and can read, write, and communicate in English. AR 210, 212, 291-96. He has past work as a fast food cook, game attendant, and agricultural worker. AR 56-57, 212, 219-221.

## V.    The ALJ's Findings

The ALJ determined that Plaintiff was not under a disability within the meaning of the Act at any time from March 3, 2015 (the date Plaintiff filed his application) through January 31, 2018 (the date the ALJ issued his decision). AR 16, 30.

**At step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application filing date. AR 18.

**At step two**, the ALJ found that Plaintiff had the following severe impairments: low body mass index, spinal disorder with myofascial pain, rule-out intellectual disorder, and affective disorder. AR 18.

**At step three**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpt. P, Appendix 1. AR 19.

**At step four**, the ALJ found that Plaintiff had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 416.967(a). AR 21. With respect to Plaintiff's physical abilities, the ALJ found that Plaintiff could

occasionally stoop, squat, crouch, crawl, kneel, and climb ramps and stairs, but could never climb ladders, ropes, or scaffolds. AR 21. With respect to Plaintiff's mental abilities, the ALJ found that Plaintiff could engage in unskilled, repetitive, and routine tasks in two-hour increments. AR 21. He could have superficial contact with the public, occasional contact with supervisors, and work in proximity to co-workers but not in coordination with them. AR 21. Given these physical and psychological limitations, the ALJ found that Plaintiff was unable to perform any past relevant work. AR 29.

**At step five**, the ALJ found that in light of Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that he could perform. AR 29. These included the jobs of an assembler, a dowel inspector, and a waxer. AR 30.

## VI. Issues for Review

Plaintiff argues that the ALJ: (1) improperly evaluated and weighed the medical opinion evidence, (2) failed to properly assess Listing 5.08 (weight loss due to a digestive disorder), (3) improperly discredited his subjective pain complaint testimony, and (4) improperly found at step five that other jobs existed in significant numbers in the national economy that he could perform. ECF No. 11 at 2, 4-21.

///

## VII.  Discussion

## A.  The ALJ did not Err in Weighing the Medical Opinion Evidence

Plaintiff argues that the ALJ erred in assessing and weighing the medical opinion evidence from two providers: (1) treating physician Jeremiah Crank, M.D., and (2) examining psychiatrist Erum Khaleeq, M.D. ECF No. 11 at 4-12.

### 1.  Legal standards

Title XVI's implementing regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (non-examining physicians). *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001); *see* 20 C.F.R. § 416.927(c)(1)-(2). If a treating or examining doctor's opinion is contradicted by another doctor's opinion—as is the case here— an ALJ may only reject it by providing "specific and legitimate reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ satisfies this standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his [or her] interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). In contrast, an ALJ fails to satisfy the standard when he or she "rejects a medical opinion or assigns it little weight while doing nothing more

than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his [or her] conclusion." *Id.* at 1012-13.

### 2.   Treating physician Jeremiah Crank, M.D.

Dr. Crank treated Plaintiff for neck and low back pain from June 2014 to October 2016. AR 394-97, 532-538. Throughout Dr. Crank's treatment of Plaintiff, he consistently noted that Plaintiff never had any pain, tenderness, weakness, or numbness in his upper extremities. *See* AR 380 ("ue/le nl strength and sensation"), 383 (same), 386 (same), 394 ("Pertinent negatives include…tenderness or tingling in the arms."), 459 ("ue/le nl strength and sensation"), 464 (same), 552 (same), 560 ("no radiation of pain/weakness/numbness ue"), 564 ("ue/le nl strength and sensation"). He never noted any arm, hand, or finger problems, or any limitations with manipulation, handling, reaching, or with fine or gross motor skills. *See* AR 376-380 (Feb. 2015), 381-83 (Dec. 2014), 384-87 (Sept. 2014), 394-97 (June 2014), 454-459 (May 21, 2015), 460-64 (May 12, 2015), 532-538 (Oct. 2016), 539-545 (Aug. 2016), AR 546-552 (Feb. 2016), 559-564 (Aug. 2015).

In May 2015, Dr. Crank submitted a physical functional evaluation in which he described Plaintiff's physical capabilities. AR 466-470. He diagnosed Plaintiff with cervical strain, lumbar strain, lower back pain, and degenerative changes of the neck. AR 468. Despite these conditions, he opined that Plaintiff could still

sustain sedentary work on an ongoing basis. AR 467. In the section of the form that asked him to list the affected work activities by associating them with letters, he noted the range of letters generally encompassing all physical activities ("a" to "k"). *See* AR 468. These included sitting, standing, walking, lifting, carrying, handling, pushing, pulling, reaching, stooping, and crouching. AR 468.

The ALJ assigned significant weight to Dr. Crank's opinion, reasoning that he was Plaintiff's treating physician. AR 26-27. However, the ALJ also found that his opinion appeared to overstate Plaintiff's limitations, given the mild imaging and examination findings, Plaintiff's unremarkable presentation during appointments, Plaintiff's ability to work with these conditions for many years, and the discrepancies in Plaintiff's reports. AR 26. The ALJ further noted that he was adopting this opinion for purposes of assessing Plaintiff's limitations stemming from his spinal condition and low body weight. AR 26. The ALJ ultimately determined that Plaintiff could perform sedentary work and could only occasionally stoop, squat, crouch, crawl, and kneel. AR 21.

Plaintiff argues that the ALJ erred by not also including Dr. Crank's limitations with respect to reaching and handling. ECF No. 11 at 5-6. This was important, he argues, because "[m]ost unskilled sedentary jobs require good use of both hands and fingers" and having manipulative limitations greatly decreases the number of sedentary jobs available. *Id.* at 6. Had the ALJ accounted for these

reaching and handling limitations, Plaintiff argues, "there would almost certainly have been no jobs in the nation" he could have done. *Id.*

Even assuming Dr. Crank intended to limit Plaintiff's abilities to reach and handle, the ALJ did not err by not crediting this portion of his opinion. Throughout his treatment of Plaintiff, Dr. Crank never noted any issues with or limitations in Plaintiff's shoulders, arms, hands, or fingers. In fact, he consistently noted no pain, tenderness, weakness, or numbness in these areas. This was a legitimate reason to not include his purported reaching and handling limitations in the residual functional capacity. *See Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003) (physicians' opinions may be rejected if unsupported by their own treatment notes). This is supported by the rest of the record, which is devoid of any reference to problems in Plaintiff's upper extremities. Plaintiff never alleged any upper extremity symptoms in his application for benefits or in his hearing testimony. AR 43-67, 76-83, 90, 211. Moreover, his other physicians—including Dr. Steven Foster and Dr. Juan Hurtarte—consistently noted normal upper extremity strength, normal motor skills, and that "pushing, pulling, and reaching do not cause significant pain." AR 389; *see also* AR 346, 358, 362, 391-92, 421-22, 446.

### 3. Examining psychiatrist Erum Khaleeq, M.D.

Dr. Khaleeq evaluated Plaintiff in September 2015. AR 578-581. In preparing for the examination, her review of records consisted of "a front sheet

listing his medical problems as lower back pain, neck pain, [and] left hip pain," in addition to a clinic questionnaire "listing coronary heart disease as a risk." AR 578. She then interviewed Plaintiff and performed a mental status examination. AR 578-580. She diagnosed Plaintiff with unspecified intellectual disability and depression due to his 1999 back injury. AR 580.

With respect to Plaintiff's work limitations, Dr. Khaleeq opined that Plaintiff could perform simple tasks but may get districted with more detailed and complex ones. AR 581. She further opined that he could accept instructions from supervisors but would have difficulty interacting with co-workers and the public. AR 581. She believed he "may take some time to perform work activities on a consistent basis," given his difficulty answering questions on the intellectual functioning portion of the mental status examination. AR 581. She also thought he "may have difficulty maintaining attendance in the workplace" in light of his self-reported back pain. AR 581. She concluded that "[t]he usual stress encountered in the workplace could further aggravate his psychiatric condition." AR 581.

The ALJ assigned partial weight to Dr. Khaleeq's assessment. AR 27-28. He agreed with her that Plaintiff was limited to simple tasks and would have trouble interacting with co-workers and the public. AR 21, 28. He disagreed, however, that Plaintiff would have problems consistently performing work activities, maintaining attendance, or dealing with workplace stress. AR 28. The ALJ reasoned that: (1)

Dr. Khaleeq did not conduct IQ testing to support her diagnosis of intellectual disability, (2) in diagnosing depression, she relied on Plaintiff's subjective complaints and did not review any of his medical records, (3) both of her diagnoses were inconsistent with the rest of the medical record, which indicated that Plaintiff did not have an intellectual disability or depression, (4) to the extent her opinion relied on Plaintiff's complaints of back pain, she was not qualified to assess Plaintiff's physical function, nor did she review any of his medical records, which demonstrated normal imaging and examination findings, and (5) Plaintiff's mother indicated in a third party function report that Plaintiff had no problems concentrating, handling changes in routine, or handling stress.[2] *See* AR 18, 28.

Generally, these are all legitimate bases for discounting a medical provider's opinion. *See Dixon v. Colvin*, 2016 WL 3661262, at *4 n.2 (E.D. Ky. 2016) (citing 20 C.F.R. § 416.927(c)(3)) (concluding that ALJ was entitled to discount psychiatrist's borderline I.Q. diagnosis "because he did not actually perform I.Q. testing"); *Bayliss*, 427 F.3d at 1217 (doctor's failure to review other medical records is a basis to discount his or her opinion); 20 C.F.R. § 416.927(c)(6) (in weighing medical opinion, ALJ will consider "extent to which a medical source is familiar with the other information in your case record"); *Cox v. Astrue*, 2012 WL

---

[2] Plaintiff argues that "the ALJ erred in giving less weight to Dr. Khaleeq on the basis she only saw [him] for a single evaluation." ECF No. 11 at 11. While the ALJ noted that Dr. Khaleeq only examined Plaintiff once, his point was that her findings conflicted with and were outweighed by the longitudinal treatment record. *See* AR 28.

3862135, at *8 (D. Or. 2012) ("[F]ailure to review all records is a legitimate reason to reject a medical opinion."); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (opinions consistent with medical record are entitled to more weight); *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (ALJ may discount psychologist's opinion about a claimant's mental limitations if that opinion rests on claimant's self-reports of physical ailments); *Castilleja v. Colvin*, 2016 WL 6023846, at *5-6 (E.D. Wash. 2016) (Peterson, J.) (ALJ properly discounted psychiatrist's opinion on the basis that it was inconsistent with third party function report completed by claimant's husband).

### i. Reliance on back symptoms

Plaintiff first argues that the ALJ improperly discounted Dr. Khaleeq's opinion to the extent it relied on Plaintiff's back symptoms. ECF No. 11 at 8-9. He disagrees with the ALJ's reasoning that Dr. Khaleeq was not qualified to assess his physical function and that she did not review his medical records. *Id.* First, he argues that Dr. Khaleeq is a medical doctor who specializes in psychiatry and "is therefore qualified to assess both physical and psychiatric limitations." *Id.* at 9. While this is true, she did not perform a physical examination. *See* AR 578-80. Plaintiff acknowledges that Dr. Khaleeq did not review any medical records, but argues that she personally observed that he was underweight and walked in pain. ECF No. 11 at 9. However, a failure to review records is a valid basis to discount

an opinion despite a doctor's personal observations during an examination. *See Cox*, 2012 WL 3862135, at *7-8. Finally, Plaintiff implies that Dr. Khaleeq would have reached the same result even if she had reviewed his medical records because most of the records were from Dr. Crank, who "assessed disabling physical limitations." ECF No. 11 at 9. Dr. Crank, however, specifically opined that Plaintiff could work, albeit on a sedentary basis. *See* AR 467.

### ii.    Reliance on depression

Next, Plaintiff argues that the ALJ improperly discounted Dr. Khaleeq's depression diagnosis and corresponding limitations. ECF No. 11 at 9-11. He disagrees with the ALJ's reasoning that Dr. Khaleeq relied on his subjective complaints, did not review his medical records, and that this diagnosis was inconsistent with the rest of the medical record. *Id.*

Plaintiff first points out that psychiatric evaluations are necessarily subjective. *Id.* at 10 (quoting *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017)). While this is true, Dr. Khaleeq opined that Plaintiff's depression was "stemming out from his back injury back in 1999 causing him chronic pain and difficulty." AR 581. Because her psychological opinion rested on a physical ailment, the ALJ was entitled to discount it based on self-reports. *Sandgathe*, 108 F.3d at 980.

Plaintiff also argues that the ALJ erred in finding that Dr. Khaleeq's depression diagnosis was inconsistent with the rest of the medical record. ECF No. 11 at 10. He argues that Dr. Khaleeq was the only psychiatrist who evaluated him and that other providers did not "inquire or comment" about his mental health, as these conditions were beyond their specialties. *Id.* However, Dr. Crank and Dr. Hurtarte did inquire into, comment on, and evaluate Plaintiff for potential depression. They administered the Patient Health Questionnaire[3] nine times over the course of two years and each test revealed no depression. AR 377-78 (Feb. 2015), 382 (Dec. 2, 2014), 385 (Sept. 2014), 501 (Jan. 2015), 504 (Dec. 5, 2014), 533-34 (Oct. 2016), 547-49 (Feb. 2016), 554-55 (Dec. 2015), 560-61 (Aug. 2015). And although they are not psychiatrists, they are medical doctors and are - as Plaintiff himself acknowledges -"therefore qualified to assess both physical and psychiatric limitations." ECF No. 11 at 9.

Finally, Plaintiff argues that the ALJ "failed to consider Dr. Khaleeq's own objective, supportive findings." ECF No. 11 at 11. The ALJ thoroughly analyzed Dr. Khaleeq's report and was undoubtedly aware of these findings. *See* AR 28. However, the ALJ simply determined that in light of the other physicians'

---

[3] The PHQ is a multipurpose instrument for screening, diagnosing, monitoring, and measuring the severity of depression.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 16

consistent findings to the contrary, these either reflected transient symptoms or were of questionable reliability. *See Batson*, 359 F.3d at 1195.

### iii. Plaintiff's mother's third party function report

Finally, Plaintiff argues that the ALJ erred in discounting Dr. Khaleeq's opinion based on his mother's observations that he had no problems concentrating, handling changes in routine, or handling stress. ECF No. 11 at 11-12. He argues that these lay observations should be outweighed by a psychiatric professional's opinion. *Id.* at 12. This argument fails in light of *Castilleja v. Colvin*, 2016 WL 6023846 (E.D. Wash. 2016). In that case, a psychiatrist wrote a report that was virtually identical to Dr. Khaleeq's. *Id.* at *4. The ALJ discounted the opinion in part on the basis that it "was not consistent with the third party function report completed by Ms. Castilleja's husband." *Id.* This court upheld that determination, reasoning that it fell within the ALJ's prerogative to interpret the evidence. *Id.* at *6.

Plaintiff also argues that other aspects of his mother's report indicated that he was disabled. ECF No. 11 at 12. He points out that his mother also observed that he did not go anywhere often, that he was "in pain all the time," and that he could not walk, stand, or bend "for a long time." AR 239-241, 243. While true, the ALJ focused on the aspects of his mother's report that conflicted with Dr.

Khaleeq's opinion—his ability to concentrate, handle changes, and handle stress—which was not improper. AR 28.

**B.     Listing 5.08 (Weight Loss Due to any Digestive Disorder)**

Plaintiff argues the ALJ erred in finding that he did not meet or equal the criteria for Listing 5.08. ECF No. 11 at 12-15.

The Listings describe, for each major body system, impairments that are severe enough to be *per se* disabling. 20 C.F.R. § 416.925. Listing 5.08 is met if the claimant: (1) has weight loss due to any digestive disorder, (2) has a body mass index of less than 17.50 calculated on at least two evaluations at least 60 days apart within a six-month period, and (3) still experiences symptoms despite prescribed treatment. 20 C.F.R. § 404 Subpt. P. App. 1, 5.08. To establish this listing, a claimant must provide "a record of [his or her] medical evidence, including clinical and laboratory findings," and show that "the technique used is the proper one to support the evaluation and diagnosis of the disorder." *Id.*, 5.00(B).

The ALJ found that Plaintiff's body mass index fell below 17.50 and therefore that he met the body mass requirement. AR 19. However, the ALJ concluded that Plaintiff did not meet the other criteria because there was no evidence that he had any kind of digestive disorder. AR 19. The ALJ reasoned that his abdominal and pelvic imaging was normal, *see* AR 510, 514, and that he

always denied experiencing any gastrointestinal symptoms. AR 382, 385, 390, 458, 461, 464, 544, 551, 557, 563.

Plaintiff argues that he did have a qualifying digestive disorder—either malnutrition or malabsorption. ECF No. 11 at 14. He cites an internet website that describes symptoms associated with malabsorption—including unexplained weight loss, vitamin deficiency, weakness, fatigue, and bone pain—and argues that he experiences some of these same symptoms. *Id.* at 14-15.

However, Plaintiff points to no medical evidence in the record diagnosing him with a digestive disorder. *See id.* Plaintiff appears to concede this, acknowledging that "the search for the specific disorder is ongoing," but nevertheless asks the Court to find that such a disorder likely exists based on his various symptoms. ECF No. 11 at 15. This is not the Court's role. 20 C.F.R. § 416.921. Substantial evidence supports the ALJ's finding that Plaintiff did not meet or equal the criteria for Listing 5.08.

**C.     The ALJ did not Improperly Reject Plaintiff's Subjective Complaints**

Plaintiff argues the ALJ erred by discounting the credibility of his testimony regarding his subjective symptoms. ECF No. 11 at 15-19.

Once a claimant produces objective medical evidence of an underlying impairment that could reasonably produce some degree of the symptoms alleged—as Plaintiff has done—the ALJ can reject the claimant's symptom testimony only

by providing "specific, clear, and convincing reasons." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). Here, the ALJ found that Plaintiff's complaints of disabling limitations were undermined by: (1) the different stories he gave regarding his alleged motor vehicle accidents, which he alleged caused his disability; (2) his subsequent work history after the first alleged car accident; and (3) the inconsistencies between his allegations and the medical evidence, which included normal imaging studies, benign physical and mental examination findings, and normal presentation during examinations. *See* AR 22-26.

### 1.    Inconsistent stories regarding the alleged motor vehicle accidents

Plaintiff testified that two motor vehicle accidents were "the cause of all of [his] health problems." AR 64. However, he inconsistently reported dates and details regarding these incidents. In June 2014, at his intake appointment with Dr. Crank, he reported that he was in a car crash in 1999 and that this caused the onset of his back pain. AR 394. He also said that a second incident occurred in 2005, when a car hit him from behind. AR 394.

Six days later, at his intake appointment with Dr. Foster, he reported that he was hit as a pedestrian in 1995 and that the car crash occurred in 2007.[4] AR 388-89. He said his back pain first began after the 2007 accident. AR 389.

---

[4] The ALJ incorrectly stated that Plaintiff only reported the 1995 incident to Dr. Foster and did not mention any other motor vehicle accidents. AR 22. Plaintiff correctly notes that he reported both. ECF No. 11 at 16.

In September 2015, Plaintiff told Dr. Khaleeq that the car crash happened in 1991, when he was 21 years old, and this was when his back pain began. AR 578. He stated that the car hit black ice, flipped four times, and the driver broke his back. AR 578. He did not mention any other car accidents. *See* AR 578-81.

In December 2015, Plaintiff told Andrew Hilty, ARNP, that the car crash occurred in 2005 and that he was hit as a pedestrian in 2010. AR 553. He stated his back pain began after the 2010 incident. AR 553.

At the hearing, Plaintiff first testified that he was hit as a pedestrian in the 1990s. AR 56. He testified that he did not go to the hospital afterward because he did not have insurance. AR 61. When pressed why he did not go to an emergency room, Plaintiff responded that he did not get hit "real bad" and was able to walk away from the incident. AR 61. Later, he testified that it was the car crash that occurred in the 1990s. AR 64. He testified that the car flipped and the driver (who, per his earlier report to Dr. Khaleeq, had broken his back) had to walk to a pay phone to call for help. AR 64. He then clarified that he was hit as a pedestrian in 2005. AR 64.

The ALJ outlined these discrepancies and found that they undermined the reliability of Plaintiff's self-reported limitations. AR 22. This was proper. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (ALJs may consider prior

inconsistent statements and other testimony that appears less than candid in weighing a claimant's credibility).

Plaintiff argues that these inconsistencies were irrelevant because the Social Security Act "is unconcerned with the cause of a disorder." ECF No. 11 at 16. While true, the ALJ's concern was not whether the car accidents actually caused Plaintiff's back conditions, but rather whether his reports were consistent, which sheds light on his reliability. This was permissible. *See* SSR 16-3p.

Plaintiff also argues that he has an intellectual disability and that "limitations in remembering dates and events is [] consistent with his presentation." ECF No. 11 at 16. However, the ALJ disagreed that Plaintiff had an intellectual disorder. AR 18; *see* AR 392 (Dr. Foster's report noting "normal intellect"). While intellectual disability was one possible explanation for the inconsistencies in Plaintiff's reports, the ALJ concluded that another explanation was more plausible. And on appellate review, it is not the Court's role to reweigh evidence that is susceptible to more than one rational interpretation. *Thomas*, 278 F.3d at 959.

### 2. Subsequent work history after alleged car accident

Next, the ALJ found that even accepting Plaintiff's testimony that he was involved in a serious motor vehicle accident in the 1990s, his allegations were inconsistent with his subsequent work history. AR 22. His earning records show that he was employed at Eakin Fruit Company as a seasonal agricultural worker

from 1997 to 2001, which required him to stand, walk, and crouch for 9.5-hour shifts. AR 200-01, 221. This work ended due to its seasonal nature. AR 212.

The ALJ found that this work activity after Plaintiff's alleged disabling car accident undermined his allegations that his spinal pain precluded him from standing or walking for more than a few minutes at a time. AR 22. This was proper. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001) (alleged limitations were properly rejected where claimant was able to work after the injury causing the alleged limitations); *Trisdale v. Astrue*, 334 Fed. Appx. 85, 87 (9th Cir. 2009) (holding that claimant's "work activity after the accident" was a proper basis for discounting credibility); *Parsons v. Comm'r of Soc. Sec.*, 2012 WL 4468542, at *7 (E.D. Cal. 2012) (claimant's work activity after car accident, which he claimed caused his disabling back injury, was a proper basis for rejecting his alleged limitations).

Plaintiff argues that this work activity occurred before his alleged onset date. ECF No. 11 at 17. While true, it was after the initial car accident that he alleged caused his disabling back condition. AR 64; *see Osenbrock*, 240 F.3d at 1165. He also argues that the ALJ should not have discounted his allegations because he "tried to work for a short period of time and, because of [his] impairments, failed." ECF No. 11 at 17. But the record indicates he stopped working because the job was seasonal. AR 212. Finally, he argues he made less than $32,000 total and was

never at substantial gainful activity levels. ECF No. 11 at 17. Nevertheless, it was something the ALJ was entitled to consider. *Casas v. Comm'r of Soc. Sec.*, 2017 WL 2222613, at *6 (D. Ariz. 2017) ("To the extent Plaintiff is actually arguing that the ALJ should not have considered any of Plaintiff's work activity because such work activity did not amount to SGA, (Doc. 22 at 2-3), this argument also fails.").

### 3. Complaints inconsistent with medical evidence

Finally, the ALJ reasoned that Plaintiff's alleged limitations were generally inconsistent with the medical evidence, which included normal or mild imaging studies, benign physical and mental examination findings, and normal presentation during examinations. AR 22-26.

First, the ALJ outlined nine imaging studies of Plaintiff's cervical, thoracic, and lumbar spine from between 2014 and 2016. AR 23. Nearly all of these were "completely normal" and, at most, revealed only mild or minimal changes. AR 23; *see* AR 508 (December 2016 MRI showing normal lumbar spine), 509 (December 2015 MRI showing normal thoracic spine), 511 (June 2015 x-ray showing normal thoracic spine), 512 (June 2015 x-ray showing normal lumbar spine except for "minimal scoliosis"), 513 (March 2015 x-ray showing normal lumbar spine except for "minimal scoliosis"), 535 (June 2014 x-ray showing normal lumbar spine and "mild degenerative changes" of cervical spine), 575 (August 2016 x-ray showing normal thoracic spine), 576 (August 2016 x-ray showing normal lumbar spine,

with "mild scoliotic deformity resolved"). Plaintiff's pain doctor reviewed the imaging and noted, "No etiology is appreciated for the patient's symptoms." AR 509, 566. The ALJ reasoned that given Plaintiff's descriptions of incapacitating back symptoms due to the motor vehicle accidents, one would expect to see some findings. AR 23. However, all of the imaging studies demonstrated normal or, at most, mild findings throughout Plaintiff's spine. AR 23.

Next, the ALJ outlined two years' worth of chart notes from Plaintiff's physicians and noted that his physical examinations were largely benign. AR 23-24. The ALJ described how Plaintiff consistently had full range of motion in his cervical, thoracic, and lumbar spine, as well as in both arms. AR 23-24; *see* AR 346, 358, 362, 401-02, 406, 410, 470, 490, 493, 502, 505, 566. He had a normal gait, normal balance, could walk on his heels and toes, and denied weakness. AR 346, 358, 362, 392, 406, 410, 490, 493, 502, 505, 566. He had full motor strength, normal muscle tone, and no muscle atrophy. AR 392, 490, 493, 502, 505, 566. He generally had negative straight leg raise tests, with some exceptions. AR 23-24, 380, 383, 386, 392, 477, 564, 566. He also generally had normal sensation, again with some exceptions in his left thigh and leg. AR 490, 493, 502, 505, 564, 566. Finally, the ALJ noted that Plaintiff presented unremarkably during his examinations and was always well-appearing, cooperative, and in no distress. AR

346, 358, 362, 406, 410, 429, 445, 480, 482, 484, 487, 490, 493, 502, 505, 568, 571, 573.

The ALJ found that Plaintiff's physical[5] examination findings and benign presentation were inconsistent with his allegations of debilitating back pain and his alleged inability to stand, walk, or sit for more than a few minutes. AR 24. The ALJ also noted that although Plaintiff claimed to be very sedentary, he had not lost muscle tone or developed atrophy. AR 24. This was proper. *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (ALJ may discount claimant's subjective symptom complaints when they are inconsistent with the medical evidence and examination findings); *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (same).

Plaintiff first argues that the ALJ improperly rejected his subjective pain complaints because he did not produce medical evidence corroborating them. ECF No. 11 at 18. While this would be error, this is not what the ALJ did. Rather, the ALJ discredited Plaintiff's testimony because the medical records affirmatively contradicted it, which is permissible.

---

[5] The ALJ also discounted Plaintiff's credibility in part because his test results for depression were consistently negative and he also consistently denied experiencing depressive symptoms. AR 25-26. However, Plaintiff never alleged that he suffered from depression either in his application or at the hearing. AR 64, 90, 211. In fact, he denied it. AR 64. Therefore, Plaintiff's allegations are consistent with the medical record in this respect and the ALJ erred in discrediting them on this basis. The error, however, was harmless because the ALJ properly found that Plaintiff's physical complaints were belied by the medical evidence.

Plaintiff also cites a variety of abnormal examination findings scattered throughout the medical record, which he asserts are consistent with and support his testimony. ECF No. 11 at 18-19. He argues these records indicate limited range of motion, "increased cervical lordosis," "reduced lumbar lordosis," "kyphotic deformity," weakness, decreased sensation, "pectus excavatum," and positive straight leg tests. *Id.* However, (1) these are isolated findings that do not reflect the totality of the medical record, (2) the ALJ agreed there were some abnormal findings, but noted that these were exceptions, (3) some of these conditions, such as sunken chest, are not at issue in this case and have no identifiable functional limitations, (4) almost none of these records are from acceptable medical sources, *see* AR 318, 320, 324, 325, 327, 329, 330, 392, 418, 430, 439, unlike the records upon which the ALJ relied, and (5) many of these records actually reveal normal findings, *e.g.*, AR 318 (cited for reduced range of motion, which were instead "WNL"), 469 (same).

When the ALJ presents a reasonable interpretation that is supported by substantial evidence, it is not the Court's role to second-guess it. For the reasons discussed above, the ALJ did not err when discounting Plaintiff's subjective complaint testimony because he provided multiple clear and convincing reasons for doing so.

**D.    Substantial Evidence Supports the ALJ's Step Five Finding that Other Jobs Existed in Significant Numbers in the National Economy that Plaintiff Could Perform**

Finally, Plaintiff argues that substantial evidence does not support the ALJ's step five finding because the vocational expert's job number estimates were inaccurate. ECF No. 11 at 19-21. He asserts that he performed his own labor market research in Job Browser and that his search produced job number estimates that were significantly lower than the vocational expert's. *Id.* at 20-21.

In this case, the vocational expert testified that Plaintiff's residual functional capacity allowed him to perform the jobs of: (1) assembler, of which there are 29,000 jobs nationwide, (2) dowel inspector, of which there are 13,000 jobs nationwide, and (3) waxer, of which there are 6,700 jobs nationwide. AR 84-85. Relying on this testimony—which the ALJ was entitled to do, *see Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2018)—the ALJ found that Plaintiff could perform these three jobs. AR 30.

Plaintiff contends that he performed his own labor market research in Job Browser and that his search produced job number estimates that were significantly lower than the vocational expert's. ECF No. 11 at 20-21. However, submitting one's own research from Job Browser—evidence that is unauthenticated, unsworn, outside of the record, not subject to questioning, and unaccompanied by any analysis or explanation from a vocational expert to put the raw data into context—

is not a sufficient basis to undermine the reliability of a testifying vocational expert's opinion. *Michelle S. v. Comm. of Soc. Sec.*, No. 1:18-CV-03199-RHW, ECF No. 17, at 24-25 (E.D. Wash. 2020) (Whaley, J.); *Helen P. v. Comm. of Soc. Sec.*, No. 1:18-CV-03236-RHW, ECF No. 17, at 9-11 (E.D. Wash. 2020) (Whaley, J.); *Martinez v. Colvin*, 2015 WL 4270021, at *9 (C.D. Cal. 2015); *Cardone v. Colvin*, 2014 WL 1516537, at *5 (C.D. Cal. 2014); *Vera v. Colvin*, 2013 WL 6144771, at *22 (C.D. Cal. 2013); *Solano v. Colvin*, 2013 WL 3776333, at *1 (C.D. Cal. 2013).

## VIII.  Order

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and is free from legal error.

Accordingly, **IT IS ORDERED:**

1.   Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is **DENIED.**

2.   Defendant's Motion for Summary Judgment, **ECF No. 16**, is **GRANTED**.

///

///

///

///

///

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 29

3. Judgment shall be entered in favor of Defendant and the file shall be **CLOSED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel, and close the file.

**DATED** this March 23, 2020.

_s/Robert H. Whaley_
ROBERT H. WHALEY
Senior United States District Judge
